IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SEMMATERIALS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 05-320-S-LMB |
| | ) | |
| v. | ) | **FINDINGS OF FACT,** |
| | ) | **CONCLUSIONS OF LAW,** |
| ALLIANCE ASPHALT, INC., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

  This matter came before the Court for hearing on Plaintiff SemMaterials, L.P.'s ("SemMaterials") Motion for Entry of Default, Default Judgment and Expedited Hearing (Docket No. 33), which Motion was previously granted in part by the Court on December 20, 2006, when the Court granted entry of default against Defendant Alliance Asphalt, Inc. ("Alliance") with respect to SemMaterials' claims and Alliance's counterclaims (Docket No. 39). Having reviewed Plaintiff's Motion and supporting Memorandum, and Plaintiff having adduced the sworn testimony of its witnesses, David Lynch, Richard Jensen, and Plaintiff's counsel, and offered Plaintiff's Exhibit Nos. 1 through 8 into evidence in support of its damages claim during the evidentiary hearing before this Court on January 3, 2007, the Court now makes its Findings of Fact and Conclusions of Law as set forth below, and issues the following Order.

**FINDINGS OF FACT**

  Having carefully considered the testimony of the witnesses called at the hearing, thoroughly reviewed the exhibits admitted into evidence, and considered counsel's arguments, the Court makes and enters the following Findings of Fact pursuant to Fed. R. Civ. P. 52(a). To the extent that any conclusions of law contained herein can be considered to be or are deemed to be findings of fact, they are incorporated by reference into these findings of fact.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER - 1**

1.      SemMaterials, a limited partnership formed under the laws of the State of Oklahoma, is in the business, *inter alia*, of marketing a diverse line of liquid asphalt products ("Product") throughout the United States.  As part of its business, SemMaterials distributes its Product via rail, barge, ship, and truck to its various asphalt terminals for storage during the winter months, and later to its customers during the spring and summer months.

2.      SemMaterials is a successor in interest to Koch Materials Company ("Koch") following SemMaterials' acquisition of Koch in the Spring of 2005.  During this acquisition, SemMaterials purchased all of Koch's assets and assumed all of its liabilities as set forth in the Bill of Sale and Assumption Agreement entered into between SemMaterials and Koch, dated May 31, 2005.  (Exhibits 1 & 2).

3.      Prior to the acquisition, Koch engaged in the same business as SemMaterials.  Koch traditionally prepared its supply of Product to meet the spring and summer demands by transporting its Product inbound to its various storage facilities or asphalt terminals across the country, including its asphalt terminal located in Boise, Idaho.  When justified by freight costs, Koch traditionally used trucking companies local to the Boise area to transport the Product inbound to its Boise terminal during the winter months.  Koch also traditionally used local trucking companies to transport the Product outbound from its Boise terminal to its various customers during the spring and summer months.

4.      In the winter of 2004/2005, Koch was required to transport its Product by rail to its Boise terminal in order to meet the spring and summer demand, rather than utilize its traditional method of transportation, which were the local trucking companies.  Koch nonetheless wanted to maintain its working relationship with the local trucking companies and, as a consequence, entered into various agreements with the local trucking companies to ensure that they would be available to transport Koch's Product during the busy spring and summer months.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER - 2**

5.      One of the local trucking companies Koch entered into an agreement with during the winter of 2004/2005 was Defendant Alliance. As part of its agreement with Alliance, Koch agreed to pay Alliance certain support payments during the winter of 2004/2005 to ensure that Alliance would remain in business throughout the winter. In return for the support payments, Alliance agreed to be available to transport Koch's Product outbound from its Boise terminal during the spring and summer months of 2005.

6.      Koch and Alliance agreed that the support payments Koch would pay Alliance during the winter of 2004/2005 would serve as a form of insurance. In this respect, the parties agreed the payments were not meant to serve as a down payment for services Alliance would render in the future, but rather they were meant to secure Alliance's commitment that Alliance would transport SemMaterials' Product during the spring and summer months of 2005 at a fair market price.

7.      Pursuant to the agreement between Koch and Alliance, Koch, which later became SemMaterials, paid Alliance a total of $110,459 in support payments commencing in January 2005 and continuing through March 2005. (Exhibit 4).

8.      As consideration for its support payments made to Alliance, SemMaterials anticipated Alliance would transport approximately 50,000 tons of Product during the spring and summer months of 2005.

9.      Instead, after accepting the support payments from SemMaterials, Alliance refused to provide its trucking services to transport SemMaterials' Product during the spring and summer months, with the exception of a few loads Alliance transported for SemMaterials early in the Spring of 2005 amounting to only 300 to 500 tons total, which was a minute fraction of the transportation services Alliance had agreed to provide. SemMaterials paid Alliance for transporting these few loads in the Spring of 2005.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER - 3**

10. When SemMaterials' counsel made a written demand to Alliance for return of the $110,459 in support payments on July 13, 2005, Alliance refused to return the money. (Exhibit 6).

11. In an email from one of Alliance's principals, Susan Buckley, dated March 20, 2005, Ms. Buckley indicated that the reason Alliance refused to provide trucking services to SemMaterials for the spring and summer months of 2005 was because Alliance had decided it could make more money transporting other products for other entities. (Exhibit 8).

12. As a result of Alliance's refusal to satisfy its contractual obligations to SemMaterials, SemMaterials was required to hire another common carrier, M&L Equipment, to transport its Product during the spring and summer months of 2005.

13. M&L Equipment was a small trucking company that did not have the manpower or equipment to haul the amount of Product Alliance had agreed to haul for SemMaterials during the spring and summer months of 2005.

14. As a result, SemMaterials was required to rent trailer equipment for M&L Equipment to use in order to haul its Product that Alliance had agreed to haul for SemMaterials.

15. Using the rented trailer equipment, M&L Equipment hauled the Product Alliance had agreed to haul for SemMaterials during the spring and summer months of 2005. In return, SemMaterials reimbursed M&L Equipment for the rental and delivery costs of the trailer equipment, and paid M&L Equipment for its freight services in hauling its Product. (Exhibit 5).

16. SemMaterials paid M&L Equipment the same freight charges for hauling its Product that it had originally agreed to pay Alliance.

17. In addition, SemMaterials paid M&L Equipment a total of $94,970.83 for rental and delivery of the trailer equipment M&L Equipment needed in order to haul the Product Alliance had agreed to haul for SemMaterials.

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER - 4**

18. Had Alliance provided its trucking services to SemMaterials during the spring and summer months of 2005 as it had promised, SemMaterials would not have incurred the $94,970.83 in rental and delivery costs for the trailer equipment.

19. In August 2005, SemMaterials initiated the instant action to recover the damages it had sustained as a result of Alliance's refusal to honor its contract with SemMaterials. SemMaterials asserted a breach of contract claim and an unjust enrichment claim against Alliance.

20. After Alliance's continued refusal to appear and defend this action, as detailed in this Court's prior Orders (Docket Nos. 28, 30, 31, 39 & 40), the Court, on December 20, 2006, granted Plaintiff's Motion for Entry of Default (contained in Docket No. 33), directing the Clerk to enter default against Defendant with respect to Plaintiff's claims and Defendant's counterclaims, *Order* (Docket No. 39). The Court also granted Plaintiff's Motion for Expedited Hearing on its Motion for Default Judgment, scheduling an evidentiary hearing for January 3, 2007, for purposes of determining the amount of Plaintiff's damages. *Id.*

21. Despite receiving personal service of Plaintiff's moving papers for default, as well as the Court's Order setting a hearing on Plaintiff's motion for default judgment for January 3, 2007, *Affidavit of Service* (Docket No. 41), Defendant failed to appear for the January 3rd hearing or to provide any written opposition to Plaintiff's Motion.

22. During the January 3, 2007 hearing, Plaintiff appeared by counsel and presented sufficient evidence establishing the damages it sustained in the amount of $110,459 in support payments and $94,970.83 in trailer rental and delivery costs.

23. During the January 3, 2007 hearing, Plaintiff's counsel also orally moved for an award of reasonable attorney's fees and costs pursuant to Idaho Code § 12-120(3) and for an award of pre-judgment interest pursuant to Idaho Code § 28-22-104(1).

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER - 5**

## CONCLUSIONS OF LAW

To the extent any of the above findings of fact are deemed to be conclusions of law, they are incorporated by reference into these conclusions of law. The Court makes the following conclusions of law:

1. The Court has jurisdiction over Defendant Alliance and the subject matter of this action.

2. Plaintiff provided Defendant with appropriate notice of its motion for default judgment and the January 3, 2007 evidentiary hearing.

3. As a consequence of SemMaterials' acquisition of Koch in the Spring of 2005, SemMaterials stands in the shoes of Koch in terms of Koch's contractual rights obtained via its agreement with Alliance. Thus, SemMaterials is the real party in interest entitled to recover the damages and other relief granted against Alliance in this matter.

4. The decision whether to enter a default judgment under Federal Rule of Civil Procedure 55(b)(2) rests in the sound discretion of this Court. *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003). When exercising its discretion to award a default judgment, the Court must consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* (quoting *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).

5. Once a default has been entered, "the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *Id.* The plaintiff is required to prove all damages sought, but his burden in doing so, in this context, is "relatively lenient." *Id.* Once default is entered, "[i]njury is established and plaintiff need prove only that

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER - 6**

the compensation sought relates to the damages that naturally flow from the injuries pled." *Id.* When determining damages, the Court can rely on affidavits submitted by the plaintiff or order a full evidentiary hearing. *Id.*; Fed. R. Civ. P. 55(b)(2).

6.   With respect to the first factor the Court must consider when determining whether to grant a default judgment against Alliance, the Court concludes that SemMaterials will be prejudiced if a default judgment is not entered against Alliance. Due to Alliance's continued refusal to appear and defend this action, the Court granted SemMaterials' motion for entry of default. As a consequence, Alliance has effectively admitted that SemMaterials has incurred damages as a result of Alliance's breach of contract and that Alliance has been unjustly enriched in the amount of $110,459, in addition to any other damages SemMaterials successfully established at the evidentiary hearing. Given Alliance's substantial delay and failure to appear in this matter, SemMaterials will suffer prejudice if a default judgment is not entered in its favor because, without the default judgment, SemMaterials would be without recourse for recovery.

7.   The second and third factors the Court must consider require that SemMaterials state a claim upon which relief may be granted. *Philip Morris USA, Inc.*, 219 F.R.D. at 499. SemMaterials' Complaint properly alleges the necessary elements for a breach of contract claim and unjust enrichment claim. The Complaint identifies the existence of the parties' contract, (Docket No. 1, ¶¶ 13-14), SemMaterials' compliance with its obligations under said contract and Alliance's material breach of the contract, (*id.* at ¶¶ 15-18), and the fact that SemMaterials has sustained damages as a result thereof. (*Id.* at ¶ 19). The Complaint also identifies the value SemMaterials conferred on Alliance in the form of support payments, (*id.* at ¶ 21), Alliance's actual or constructive knowledge of same, (*id.* at ¶ 22), SemMaterials' expectation that Alliance repay the support payments by providing services and Alliance's failure to do so. (*Id.* at ¶¶ 22-24). Alliance's failure to timely appear to defend this action as required under Local Civil Rule 83.6(c)(2) effectively constitutes an admission to these averments, which the Court accepts as true as a result of the entry of default. Under the present circumstances, the substantive merits

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER - 7**

and sufficiency of SemMaterials' Complaint are established and default judgment is warranted.

8. The fourth factor the Court must consider is the amount of money at stake in relation to the seriousness of Alliance's misconduct. *Philip Morris USA, Inc.*, 219 F.R.D. at 500. Based on the Findings set forth above, the Court concludes that SemMaterials has sustained damages as a result of Alliance's failure to perform its contractual obligations in the amount of the $110,459 in support payments SemMaterials paid Alliance and the $94,970.83 in trailer expenses SemMaterials paid to M&L Equipment. Given that the amount of money at stake exceeds $205,000, and that Alliance has repeatedly ignored this Court's orders that Alliance appear and defend this action, the Court concludes that imposition of a substantial monetary award against Alliance is justified.

9. The fifth factor the Court must consider is the possibility of a dispute as to any material facts in the case. Although Alliance's Answer (Docket No. 6) disputes many of the factual allegations in SemMaterial's Complaint, Alliance has filed nothing in the one and one-half years since its Answer was filed to evidence any disputed, material facts, despite several opportunities to do so. Alliance's deliberate and continued failure to participate in this matter thus evinces a lack of any dispute of material fact. As a consequence of the entry of default against Alliance, all of SemMaterials' well-pleaded facts in its Complaint are taken as true, and based on the Findings set forth above, SemMaterials has sufficiently demonstrated the amount of damages it has sustained. Under the present circumstances, no dispute exists regarding the material averments of SemMaterials' Complaint, in which case entry of a default judgment against Alliance is warranted.

10. The sixth factor the Court must consider is the possibility that a default will be the result of excusable neglect. Given that this Court has provided Alliance with several opportunities to appear and defend this action, yet Alliance has repeatedly failed to appear despite receiving notice of the Court's orders in this regard, excusable neglect is not an argument

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER - 8**

available to Alliance.  The default entered is the result of Alliance's willful disobedience, a circumstance warranting entry of default judgment against Alliance.

11.     The final factor the Court must consider is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Philip Morris USA, Inc.*, 219 F.R.D. at 498.  As the court recognized in *Philip Morris*, the mere existence of Fed. R. Civ. P. 55(b) indicates that this factor alone is not dispositive.  *Id.* at 501.  Alliance's repeated failures to appear and defend this action makes a decision on the merits impractical, if not impossible.  Hence, this factor does not preclude the Court from entering a default judgment against Alliance.

12.     The gravamen of SemMaterials' Complaint against Alliance involves a commercial transaction arising from a contract for services.  SemMaterials is the prevailing party in this action and, therefore, it is entitled to an award of reasonable attorney's fees and costs incurred in prosecuting this action pursuant to Idaho Code § 12-120(3).  The Court will award SemMaterials its reasonable attorney's fees and costs after counsel provides the necessary supporting documentation for same as required under Federal Rule of Civil Procedure 54.

13.     The $110,459 in support payments Alliance owes SemMaterials as a result of its nonperformance is a liquidated sum, which became due and owing on July 13, 2005, when SemMaterials' counsel made written demand to Alliance for the return of said support payments.  As a consequence, SemMaterials is entitled to an award of prejudgment interest on the amount of $110,459, commencing from July 13, 2005 to January 3, 2007, the date of judgment, at the statutory rate of 12% per year as provided in Idaho Code § 28-22-104(1), or $46,050.91.

14.     The $94,970.83 in total trailer rental and delivery costs SemMaterials paid M&L Equipment also represents a combination of liquidated sums which individually became due and owing at the end of each month in which M&L Equipment submitted invoices for such expenses.  As a consequence, SemMaterials is entitled to an award of prejudgment interest on these varying amounts commencing from the end of each month invoices were due and owing through the date of judgment, January 3, 2007, at the statutory rate of 12% per year as provided in Idaho Code §

28-22-104(1), or as more specifically set forth in the following table:

    April 2005 invoices totaling $ 1,750.00, with prejudgment interest of $   351.74

    May 2005 invoices totaling $11,075.00, with prejudgment interest of $2,115.17

    June 2005 invoices totaling $15,087.50, with prejudgment interest of $2,730.66

    July 2005 invoices totaling $15,100.00, with prejudgment interest of $2,581.88

    Aug. 2005 invoices totaling $14,500.00, with prejudgment interest of $2,334.31

    Sept. 2005 invoices totaling $22,750.00, with prejudgment interest of $3,434.94

    Oct. 2005 invoices totaling $14,708.33, with prejudgment interest of $2,073.68

            TOTAL PREJUDGMENT INTEREST:        $15,622.38

15.    Pursuant to Idaho Code § 28-22-104(2), SemMaterials is also entitled to an award of post-judgment interest at the statutory rate of 10.125% per year until judgment is satisfied.

## ORDER

Now, therefore, IT IS HEREBY ORDERED:

1.    Plaintiff SemMaterials' Motion for Default Judgment (contained in Docket No. 33) is GRANTED and this case DISMISSED in its entirely, with prejudice.  The Court will enter a Default Judgment consistent with the above Findings of Fact and Conclusions of Law and will include an award of pre-judgment interest under Idaho Code § 28-22-104(1), as requested by counsel at the hearing.

2.    Plaintiff's oral motion for attorney fees and costs under Idaho Code § 12-120(3) is GRANTED.  The amount of fees and costs will be determined in a subsequent order.

3.    A copy of these Findings of Fact, Conclusions of Law and Order, along with the Default Judgment, shall be personally served on Alliance's owners, Susan Buckley Watson and Cory & Kristina Rose, at their personal addresses.

DATED: **January 25, 2007**.

_____
Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER - 10**