IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SEMMATERIALS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 05-320-S-LMB |
| | ) | |
| v. | ) | **FINDINGS OF FACT,** |
| | ) | **CONCLUSIONS OF LAW,** |
| ALLIANCE ASPHALT, INC., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Currently pending before the Court is SemMaterials, L.P's ("Plaintiff") Renewed Motion for Order to Show Cause Why A Writ of Execution Should Not Be Issued Against The Personal Assets of Kristina Rose ("Motion"). (Docket No. 94).

On January 7, 2009, Plaintiff's Motion, requiring that Ms. Rose appear before the Court on January 16, 2009, to show cause, if any, why a writ of execution should not be issued against her personal assets in an effort to satisfy the Amended Judgment was granted. (Docket No. 57).[1] Ms. Rose did not appear and she did not submit any written opposition to Plaintiff's Motion. Having reviewed Plaintiff's Motion and supporting papers, and in light of Ms. Rose's failure to file a timely opposition to the Motion and her failure to appear for the January 16, 2009 show cause hearing, the following Findings of Fact and Conclusions of Law as set forth below, and the following Order are hereby entered.

---

[1] On March 1, 2007, judgment was entered in favor of SemMaterials against Defendant Alliance Asphalt, Inc. ("Defendant"). (Docket No. 95).

**FINDINGS OF FACT, CONCLUSIONS OF LAW & ORDER -1-**

## I.  FINDINGS OF FACT

Having carefully considered the evidence submitted in support of Plaintiff's Motion, counsel's supporting affidavit (Docket No. 94-3), arguments made in its supporting memorandum (Docket No. 94-2), and considering the previously entered Findings of Fact and Conclusions of Law set forth in the Court's Orders entered on January 25, 2007, (Docket No. 50, specifically, findings nos. 1–11 and conclusions nos. 3, 7, and 12–14), January 15, 2008, (Docket No. 77, all findings and conclusions therein), and September 30, 2008, (Docket No. 93, findings nos. 1, 2, 6–9, 12–13, 16 and 17 and conclusions nos. 2–4, and 7–9), which were expressly adopted and incorporated herein as if restated in verbatim.  To the extent that any conclusions of law subsequently contained herein can be considered to be or are deemed to be findings of fact, they are incorporated by reference herein.

1. At the time Cory Rose's and Kristina Rose's new corporation, IdaTrans, was incorporated in late 2006 and thereafter, Ms. Rose made numerous transfers of funds totaling at least $24,840.00 from her personal bank account to accounts held by IdaTrans.  (¶ 2 of the Affidavit of Christine M. Salmi (Docket No. 94-3) [hereinafter *Salmi Affidavit*] and Exhibit A attached thereto).  A majority of these sums were used for Ms. Rose's personal expenses.  *Id.*

2. Ms. Rose has represented to others that she was the President of IdaTrans.  (¶ 3 of *Salmi Affidavit* and Exhibit B attached thereto).

3. Ms. Rose and Mr. Cory Rose, who represented himself to others as the CEO of IdaTrans, purportedly earned in early 2007—just prior to the Court's entry of judgment in favor of Plaintiff—a net combined monthly income of $7,500.00 as officers of IdaTrans.  *Id.*

4.	When examined in post-judgment proceedings regarding what assets Defendant owned that may be used to satisfy Plaintiff's judgment, Ms. Rose testified, with respect to the trucks and trailers Defendant had used for its business operations, that Defendant did not own any trucks or trailers, but only leased them.  (¶ 4 of *Salmi Affidavit* and Exhibit C attached thereto).

5.	In connection with Ms. Rose's Chapter 7 bankruptcy proceedings, however, Plaintiff discovered that Defendant had purchased five van trailers from Susan Buckley Watson, another former principal of Defendant, pursuant to a Sales and Purchase Agreement between Defendant and Ms. Buckley, dated April 15, 2005.  (See Docket No. 93, Findings of Fact No. 9 and Plaintiff's Hearing Exhibit 3 to evidentiary hearing held before the Court on January 25, 2008).

6.	Based on Ms. Rose's testimony that Alliance did not own these five van trailers, SemMaterials made no effort to locate and seize the trailers to satisfy its Judgment.  (¶ 5 to *Salmi Aff.*).  However, in the meantime, despite the entry of a preliminary injunction order by this Court in January 2007 enjoining the transfer or disposition of any of Alliance's assets (Docket Nos. 39, 40 and 44), Cory Rose and Kristina Rose allowed Ms. Buckley to take possession of Alliance's five trailers in August or September 2007, after which Ms. Buckley sold the trailers to a third party and used the proceeds to satisfy personal debt.  (Docket No. 93, Finding of Fact No. 9).

7.	Almost two years after this Court entered the March 1, 2007, amended judgment in favor of SemMaterials, the judgment remains unsatisfied in its entirety.  (¶ 7 to *Salmi Aff.*).

**FINDINGS OF FACT, CONCLUSIONS OF LAW & ORDER -3-**

## II. CONCLUSIONS OF LAW

To the extent any of the above findings of fact are deemed to be conclusions of law, they are incorporated by reference into these conclusions of law as if stated in verbatim. The following conclusions of law are hereby made:

1. Ms. Rose was provided with appropriate notice of this Court's Order setting the January 16, 2009, show cause hearing in response to SemMaterials' Motion. (Docket No. 95). Her failure to file a timely opposition to SemMaterials' Motion and to appear at the January 16, 2009, show cause hearing constitutes a consent to the relief sought in SemMaterials' Motion. *See* Dist. Idaho Loc. Civ. R. 7.1(e).

2. The Court adopts and incorporates herein its prior Conclusions of Law set forth in its January 15, 2008 Order, Nos. 2 through 4 and 6 through 7 regarding the issue of this Court's jurisdiction and the factors upon which Idaho courts rely to determine whether to pierce the corporate veil of an entity, which apply equally here.

3. Because Ms. Rose had sufficient opportunity to respond to SemMaterials' Motion, no due process concerns are implicated by granting SemMaterials' requested relief against Ms. Rose. *See Cordius Trust*, 2004 WL 616125, at *4 (distinguishing *Nelson v. Adams*, 529 U.S. 460 (2000), where the Supreme Court held that due process rights had been violated when a new party added to the judgment had not been given any opportunity to respond or oppose imposition of personal liability); *Mccarthy v. State Five Indus. Park, Inc.*, No. CV054015888, 2006 WL 829684, *2 (Conn. Super. Ct., Mar. 15, 2006) (explaining that "[a]ctions to pierce the corporate veil to enforce a judgment, however, do not violate due process because once alter ego status is established, the previous judgment is then being enforced against

**FINDINGS OF FACT, CONCLUSIONS OF LAW & ORDER -4-**

entities who were, in essence, parties to the underlying dispute; the alter egos are treated as one entity").

4.      The undisputed evidence reveals that there was such a unity of interest and ownership between Ms. Rose and Alliance that Alliance never existed as a separate entity apart from Kristina Rose, and her husband Cory Rose.  In this respect, the undisputed evidence reveals that corporate formalities were never observed—no shares were issued, no by-laws were adopted, and no written minutes were taken to evidence any regular shareholder or director meetings.  (Docket No. 77, Findings of Fact Nos. 5 and 7; Docket No. 93, Finding of Fact No. 7).  In addition, no written evidence exists regarding what specific capital, if any, was set aside to allow Alliance to operate independently as a separate entity.  (Docket No. 77, Finding of Fact No. 8; Docket No. 93, Finding of Fact No. 8).  Alliance's tax records reflect that it brought in over $3.5 million dollars in gross revenues a year after it was incorporated.  (Docket No. 77, Conclusion of Law No. 8).  A trucking company hauling goods across the country, operating at this capacity would have significant "reasonably foreseeable potential liabilities," *Alpine Packing Co.,* 121 Idaho at 765, 828 P.2d at 328; yet, just over two years after being in business, Alliance purportedly was unable to pay its creditors.  *Id.*

5.      The undisputed documentary evidence and the sworn testimony of both Cory Rose and Kristina Rose reveal that the Roses' personal funds were commonly commingled with corporate funds.  (Docket No. 77, Findings of Fact Nos. 11 and 12).  Ms. Rose conceded that this practice of commingling personal funds with corporate funds continued with Alliance's successor corporation, IdaTrans.  (¶ 2 of *Salmi Aff.* and Exhibit A attached thereto).  No evidence exists that any of the funds paid into Alliance's corporate bank account by its principals were

intended to serve as a loan to the corporation. Nor is there evidence that the regular withdrawals of Alliance's corporate funds, which were transferred to Cory Rose and Kristina Rose, were approved by Alliance's Board of Directors, or that these corporate funds were intended to repay loans the Roses may have made to the corporation that were approved by the Board of Directors. (Docket No. 77, Findings of Fact Nos. 9 and 11). Instead, evidence shows that Alliance was primarily controlled by Cory Rose and Kristina Rose and that, in reality, the Roses used Alliance as a front for their own personal business affairs.

6. Not only is the unity of interest and ownership requirement met, but an inequitable result will arise if Alliance's corporate entity is not disregarded with respect to Ms. Rose. SemMaterials may not be able to enforce its money judgment if it is concluded that Ms. Rose is not personally liable for Alliance's conduct in regard to SemMaterials. It has already been concluded that Alliance's other principal, Ms. Buckley, cannot be held personally liable for SemMaterials' judgment. (Docket No. 93, Conclusion of Law No. 13). Further, although nearly two years has passed since entry of SemMaterials' March 1, 2007, judgment (Docket No. 57), and close to a year has passed since the Order piercing the corporate veil as to Mr. Rose, SemMaterials has not been able to execute against any assets of Alliance or Mr. Rose personally to satisfy its judgment, even though reasonable attempts have been made to do so. (¶ 6 to *Salmi Aff.*).

7. Despite SemMaterials' attempts to enforce its March 1, 2007, judgment, efforts have been unsuccessful. No portion of the March 1, 2007, judgment has been satisfied as of the date SemMaterials filed its renewed Motion. (¶ 7 to *Salmi Aff.*). To allow the Cory Rose and Kristina Rose to benefit from receiving over $110,000 in support payments from SemMaterials,

**FINDINGS OF FACT, CONCLUSIONS OF LAW & ORDER -6-**

when they admittedly failed and refused to provide the services they promised to provide SemMaterials in return for those payments, would clearly result in an injustice.  *Cf. Chick*, 96 Idaho at 486, 531 P.2d at 576 (affirming trial court's decision to pierce the corporate veil where adhering to the corporate form of the judgment debtor would have resulted in an injustice given that the corporation had no money to satisfy its obligations); *Nakamura, Inc.,* 93 Idaho at 185, 457 P.2d at 424 (concluding that corporate veil must be pierced where there was "such a unity of ownership and interest between the individuals and the corporation as to make them indistinguishable," such that the individuals should be held personally liable for the debts contracted in the name of the corporation in order to prevent an injustice).

8.	Additionally, the factual findings set forth above demonstrate and clearly establish that observing the fiction that Alliance was a separate existence from Ms. Rose would sanction the fraud Ms. Rose has committed jointly with her husband, Mr. Rose.  These individuals not only controlled and operated Alliance as their alter egos, hoping to hide behind the shield against personal liability that the corporate entity generally provides, but they also attempted to dissolve the corporation and "rename" the corporation as a new company engaging in the exact same business as before (but now only with a new name) in an obvious effort to avoid paying Alliance's creditors.  Further, despite Mr. Rose's comments that Alliance has no funds to satisfy SemMaterials' judgment (Docket No. 77, Finding of Fact No. 18), the subsequent representations the Roses have made to their potential creditors suggest otherwise. (Exhibit B to *Salmi Aff.*).

9.	The undisputed facts identified above constitute ample evidence demonstrating and establishing that Ms. Rose is the alter ego of Alliance and Alliance's corporate veil should

**FINDINGS OF FACT, CONCLUSIONS OF LAW & ORDER -7-**

be pierced to allow SemMaterials to enforce its March 1, 2007, Amended Judgment (Docket No. 57) against the personal assets of Kristina Rose.

### III.  ORDER

Now, therefore, IT IS HEREBY ORDERED:

1. SemMaterials' Renewed Motion for Order to Show Cause Why A Writ of Execution Should Not Be Issued Against The Personal Assets of Kristina Rose (Docket No. 94) is GRANTED;

2. Upon application, the Clerk of the Court shall issue a writ of execution against Kristina Rose, personally and individually, for the purposes of executing on the March 1, 2007, Amended Judgment (Docket No. 57) SemMaterials, L.P obtained against Alliance Asphalt, Inc. in the sum of $318,270.18.  The writ of execution shall direct that the March 1, 2007, Amended Judgment should be satisfied, with interest, out of the personal property of Kristina Rose, and if sufficient personal property cannot be found, then out of Kristina Rose's real property; and where the March 1, 2007, Amended Judgment is a lien upon real property, the Judgment should be satisfied out of the real property belonging to Kristina Rose on the day when the March 1, 2007 Amended Judgment was docketed, or at any time thereafter, pursuant to Fed. R. Civ. P. 69(a) and Idaho Code §§ 11-102 and 104.



DATED: **February 9, 2009**.

Honorable Larry M. Boyle
United States Magistrate Judge

**FINDINGS OF FACT, CONCLUSIONS OF LAW & ORDER -8-**